UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| GENE RADEMACHER, | ) | Case No. 14-46982-705 |
| | ) | Chief Judge Kathy A. Surratt-States |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| CLETUS H. RADEMACHER, and | ) | **Adversary No. 15-4156-659** |
| SIMON J. RADEMACHER, | ) | |
| | ) | |
| Plaintiffs, | ) | **PUBLISHED** |
| | ) | |
| -v- | ) | |
| | ) | |
| GENE RADEMACHER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Plaintiffs' Complaint Objecting to Discharge, Defendant Gene Rademacher's Reply to Plaintiffs' Complaint Objecting to Debtor's Discharge, Plaintiffs' Trial Brief, and Plaintiffs' Proposed Findings of Fact and Conclusions of Law. A trial was held on October 27, 2015, at which Plaintiffs Clethus H. Rademacher and Simon J. Rademacher appeared in person and by counsel. Debtor/Defendant Gene Rademacher also appeared in person and by counsel. Plaintiffs presented witnesses which Defendant cross-examined. Defendant did not present any witnesses because Defendant failed to timely file a Witness List as required by the Order of Court Relating to Trial entered on August 14, 2015. The matter was taken under submission. Upon consideration of the record as a whole the Court makes the following **FINDINGS OF FACT**:

From July 2004 to 2006, Gene Rademacher (hereinafter "Debtor") operated a farming and cattle business under the fictitious name Rademacher Farms (hereinafter "Rademacher Farms") on 232 acres of real estate located at 1200 Highway CC, Bland, Missouri (hereinafter "Real Property"). Debtor maintains his primary residence on the Real Property and his father-in-law

resides in a modular home on the Real Property. In 2004, Debtor filed a state court action in Gasconade County, Missouri (hereinafter "State Court Action") against his two sons, Simon J. Rademacher and Cletus H. Rademacher (hereinafter collectively "Plaintiffs"). Plaintiffs then filed a counter claim seeking back wages and soy bean crop proceeds. *See* Plaintiffs' Ex. 5.

In 2004, Debtor married Jean Rademacher (hereinafter "Mrs. Rademacher"). On June 15, 2006, Debtor transferred the Real Property to himself and Mrs. Rademacher, as tenants by the entirety. In 2008, Plaintiffs filed their amended counter claim in the State Court Action alleging that Debtor fraudulently transferred the Real Property. On June 4, 2012, a judgment (hereinafter "State Court Judgment") was issued in the State Court Action and Plaintiffs, Simon J. Rademacher and Cletus H. Rademacher, were awarded $224,068.00 and $120,978.00, respectively. Further, the State Court Judgment identified several "badges of fraud" in connection with Debtor's transfer of the Real Property to himself and Mrs. Rademacher, as tenants by the entirety. The State Court Judgment, therefore, set aside the June 15, 2006 transfer pursuant to Section 428.0391 RSMo., and as of June 4, 2012, Debtor became the sole owner of the Real Property. *See* Plaintiffs' Ex. 4. Upon entry of the State Court Judgment, Plaintiffs began collection efforts against Debtor, including garnishing Debtor's wages.

On October 12, 2012, Mrs. Rademacher formed Cleavesville Cattle Company (hereinafter "Cleavesville"), a Missouri Limited Liability Company, as its only member. On December 30, 2013, Debtor transferred the Real Property to Cleavesville by Quit Claim Deed. *See* Plaintiffs' Ex. 6. In addition, Debtor transferred operating equipment and cattle to Cleavesville. Debtor did not receive any consideration for either the transfer of the Real Property or the operating equipment. On September 3, 2014, less than one year after transferring the Real Property to Cleavesville, Debtor filed his Chapter 7 bankruptcy case.

On October 15, 2014, Debtor filed his Schedules A-J. On Schedule A, Debtor disclosed the Real Property, "Gene Rademacher Farms", as Debtor's farm land with a current value of Debtor's

interest in the amount of $317,752.00 and a secured claim amount of $618,554.00. On Schedule A, Debtor also discloses his 1.5 story home with a current value of $120,000.00 and a secured claim amount of $120,000.00. Further, Debtor claimed on his Schedule C, a $15,000.00 homestead exemption in the 1.5 story home. On Schedule B, Debtor also disclosed a Disaster Payment FSA (2012 Drought payment) of $30,000.00. Debtor does not list the transfer of the Real Property to Cleavesville in his Statement of Financial Affairs filed on October 15, 2014. On March 4, 2015, Debtor filed Amended Schedule B, Amended Statement of Financial Affairs and Amended Declaration Concerning Debtor's Schedules. Here, Debtor disclosed the transfer of the Real Property to Cleavesville, in addition to the transfer of 90 head of cattle in which the sales proceeds were applied against a line of credit. To date, Debtor has not amended Schedule A.

On August 7, 2015, Plaintiffs filed this adversary proceeding objecting to Debtor's discharge under Section 727(a)(2), (a)(4)(A), and (a)(5). Plaintiffs argue that Debtor had, at the time the Real Property was transferred, the intent to hinder, delay or defraud his creditors, including Plaintiffs; Debtor knowingly and fraudulently, made a false oath or account regarding a material matter in his Chapter 7 case; and Debtor failed to satisfactorily explain the loss of assets or deficiency of assets. Debtor argues that at all times he acted in good faith and did not have the requisite intent to hinder, delay or defraud his creditors. Further, Debtor argues that he did not falsely represent any material facts addressed in his schedules.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter jurisdiction under 28 U.S.C. §§ 151, 157, and 1334 (2015) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157 (b)(2)(J) (2015). Venue is proper in this District under 28 U.S.C. Section 1409(a) (2015).

## CONCLUSIONS OF LAW

**I. Section 727(a)(2)(A)**

Section 727(a)(2)(A) provides that the court shall grant the debtor a discharge, unless "the debtor, with intent to hinder, delay or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... (A) property of the debtor, within one year before the date of the filing of the petition" 11 U.S.C. §727(a)(2)(A) (2015). To prevail on a §727(a)(2)(A) objection, plaintiff must demonstrate:

> (1) that the act complained of was done within one year prior to the date of the petition filing;
> (2) the act was that of the debtor;
> (3) it consisted of a transfer, removal, destruction, or concealment of the debtor's property; and
> (4) it was done with an intent to hinder, delay, or defraud either a creditor or officer of the estate.

*In re Korte*, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001) (citing *In re Craig*, 195 B.R. 443, 448 (Bankr. D.N.D. 1996)). Plaintiff bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *In re Sendecky,* 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002).

In the instant case, the Court finds that the evidence submitted by Plaintiffs is sufficient to establish elements one, two and three. Debtor transferred the Real Property to Cleavesville on December 30, 2013. Debtor then filed for bankruptcy protection on September 3, 2014, less than one year after the transfer. However, the outstanding issue before the Court is whether Debtor had the actual intent to hinder, delay or defraud his creditors by the transfer of the Real Property.

To succeed under Section 727(a)(2)(A) the objecting creditor need not show fraudulent intent by the Debtor, but it must show actual intent. *In re Korte*, 262 B.R. at 472. To find actual intent, under the provision denying debtor a discharge for improperly transferring property, the court can consider circumstantial evidence or it can infer it from debtor's actions. *In re Butler,* 377 B.R. 895, 916 (Bankr. D. Utah 2006). In addition, Bankruptcy Courts have identified several "badges of fraud" which for discharge denial purposes, are strong indicators of debtor's actual intent, including the following:

> (1) lack of adequate consideration for

-4-

> the property transferred;
> (2) family, friendship, or other close relation-
> ship between transferor and transferee;
> (3) retention of possession, benefit, or use of
> the property in question;
> (4) financial condition of the transferor prior to
> and after transaction;
> (5) conveyance of all of debtor's property;
> (6) secrecy of the conveyance;
> (7) existence of trust or trust relation-
> ship;
> (8) existence of cumulative effect of pattern or
> series of transactions or course of conduct
> after pendency or threat of suit;
> (9) instrument effecting the transfer suspi-
> ciously states it is in fact bona fide;
> (10) debtor makes voluntary gift to
> family member; and
> (11) general chronology of events and trans-
> actions under inquiry.

*In re Schroff*, 156 B.R. 250, 254-55 (Bankr. W.D. Mo. 1993). "Courts have found that any one of these factors can be a sufficient basis on which to find the requisite intent, and that the presence of more than one strongly indicates that the debtor did, in fact, possess the requisite intent." *Id.* at 255 (citing *In re Titus*, 75 B.R. 256, 259-60 (Bankr. W.D. Mo. 1985)). Here, Plaintiffs argue that Debtor demonstrated the actual intent to hinder, delay or defraud his creditors through several "badges of fraud" and Debtor's actions throughout the pendency of the State Court Action. This Court agrees with Plaintiffs, and has identified badges (1), (2), (3), (4), (5), (8), and (11) as evidence of Debtor's actual intent.

At trial, Debtor testified that he transferred the Real Property to Cleavesville and received no consideration for its value. Further, Cleavesville is owned solely by Debtor's wife, Mrs. Rademacher, evidencing a familial relationship between the transferor and transferee. Debtor and Mrs. Radmacher have been married since 2006 and have operated Rademacher Farms jointly before it was transferred to Cleavesville. Debtor testified that even after the transfer of Rademacher Farms to Cleavesville, he continued to work on the Real Property under Mrs. Rademacher's control, often signing checks as Mrs. Rademacher's authorized agent and conducting routine cattle pick-

ups. In fact, Cleavesville operates its farming business in the same manner as Rademacher Farms. Debtor explained that the only major change to the business is that Mrs. Rademacher now controls Cleavesville's finances. Debtor testified that he continues to resides on the property; demonstrating that he still retains possession of the Real Property for his own use and benefit.

Prior to the transfer to Cleavesville, the Real Property accounted for a vast majority of Debtor's assets, and after the transfer of the Real Property Debtor became insolvent; thus, causing Debtor's financial condition to change significantly after the entry of the State Court Judgment. Further, Debtor's testimony at trial confirmed that this was not Debtor's first attempt at transferring the Real Property. Debtor, in fact, transferred the Real Property during the pendency of the State Court Action to himself and his wife, Mrs. Rademacher. In the State Court Judgment, the State Court identified several of its own "badges of fraud" stemming from the first transfer of the Real Property to Mrs. Rademacher and Debtor, as tenants by the entirety; therefore, setting aside the June 15, 2006 transfer. This Court, thus, concludes that Plaintiffs have met their evidentiary burden and have proven that Debtor had the requisite intent to hinder, delay or defraud his creditors. For these reasons, this Court finds that Plaintiffs' objection to Debtor's discharge based on Section 727(a)(2(A) must be sustained.

**II. Section 727(a)(4)(A)**

Section 727(a)(4)(A) in relevant part provides that "[t]he court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (2015). To prove a violation of Section 727(a)(4)(A), four elements must be proven:

> (1) debtor knowingly and fraudulently;
> (2) in or in connection with the case;
> (3) made a false oath or account;
> (4) regarding a material matter.

*In re Gregg*, 510 B.R. 614, 621 (Bankr. W.D. Mo. 2014); *See also In re Freese*, 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011). "A debtor's 'knowledge' and 'intent' are questions of fact." *In re Brown,* 531

B.R. 236, 259-60 (Bankr. W.D. Mo. 2015). Intent can be established with circumstantial evidence, including a series or pattern of errors or omission. *In re Stanke*, 234 B.R. 449, 458 (Bankr. W.D. Mo. 1999). "In addition to circumstantial evidence, statements made with reckless indifference to the truth are regarded as intentionally false." *In re Gray*, 295 B.R. 338, 344 (Bankr. W.D. Mo. 2003) (citation omitted).

To merit denial of a discharge, a debtor's misrepresentation or omission must be material. *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990). A statement is material to the bankruptcy case "if it bears a relationship to the bankrupt's businesses, transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re DePriest*, 414 B.R. 518, 522 (Bankr. W.D. Mo. 2009). The threshold for materiality is low. *In re Sears*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). "The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *Id.* (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) (interior quotation marks omitted)).

Here, Plaintiffs argue that Debtor's Schedule A falsely declares Debtor's ownership interest in the Real Property and the 1.5 story house. Additionally, Plaintiffs argue that Debtor omitted the second house located on the Real Property from his Schedule A, and falsely claimed a $15,000.00 homestead exemption for a home on the Real Property in which Debtor has no interest. At trial, Debtor testified that at the time of his bankruptcy filing the Real Property was owned by Cleavesville. Debtor admitted that he did, in fact, claim property in his Schedule A for which he does not have any interest. In his defense, Debtor argued that he was confused when he completed his Schedule A, and thought that Schedule A required him to disclose information about the Real Property owned by Cleavesville. As of this date, Debtor has not amended his Schedule A.

Debtor went on to testify that he omitted the second house from his Schedule A because he neither owns nor resides in the house. Debtor testified that he assists his wife with the care of

her elderly parents and has allowed his father-in-law to reside in the modular house, away from Debtor's main living quarters. Further, Debtor reasoned that he viewed the Real Property disclosed in his Schedule A was one whole property, not to be distinguished by one or two houses as Plaintiffs point out.

Plaintiffs also argue that Debtor falsely listed a $30,000.00 disaster relief payment on his Schedule B. At trial, Debtor testified that he did not received a check for the $30,000.00 disaster relief payment because it was sent directly to the Secured Lender. Further, Plaintiffs argue that Debtor omitted the existence of farm equipment worth $67,650.00 on his original Schedule B, but then disclosed the equipment on his Amended Schedule B. In support of their claim, Plaintiffs argue that Debtor has made amendments to his Schedules, evidencing the intent to deceive Creditors. This Court disagrees with this particular argument because Debtor may amend his schedules as a matter of course before the case is closed. Fed. R. Bankr. P. 1009(a) (2015).

Nonetheless, this Court finds that Debtor's statements and omissions were material, relating directly to the Real Property, and the discovery of assets which might be used to satisfy claims of creditors. Debtor's testimony at trial demonstrated his reckless disregard for the truthfulness of statements asserted in his Schedules. Therefore, the Court concludes that Plaintiffs' objection to discharge pursuant to Section 727(a)(4)(A) must be sustained.

**III. Section 727(a)(5)**

Section 727(a)(5), in relevant part, provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. §727(a)(5) (2015). The plaintiff has the burden of proving that a loss or shrinkage of assets actually occurred, and once that burden is met, the debtor must provide a satisfactory explanation of the loss of asset. *In re Brown*, 531 B.R. 236, 265 (Bankr. W.D. Mo. 2015). "The debtor need only provide an explanation of the loss of the assets; it need not necessarily be meritorious." *In re Riley*,

305 B.R. 873, 885 (Bankr. W.D. Mo. 2004) (citation omitted).  "In other words, the debtor satisfactorily explains the loss of an asset even when his explanation is that the asset was transferred in a transaction that might have been done to hinder, delay or defraud creditors." *Id.*

Here, Plaintiffs argue that Debtor has failed to explain the loss or deficiency of the Real Property, which was substantially all of Debtor's assets.  Plaintiffs, argue that at the Rule 2004 examination on April 7, 2015, when Debtor was asked about the loss of assets his response was "vague, indefinite and unsatisfactory. " Complaint, ¶ 43-44.  At trial, Debtor testified that he once had ownership of the Real Property, but then transferred the property to Cleavesville on December 30, 2013.  Debtor testified that the reason he transferred the Real Property to Cleavesville was to provide Mrs. Rademacher with greater control over the farming business and to prepare for his retirement.  Plaintiffs further suggest that the loss of substantially all of Debtor's assets was to hinder, delay or defraud creditors; however, this Court has addressed that objection to discharge under Section 727(a)(2)(A) above.  Additionally, as provided by the record, Debtor has disclosed the transfer of Real Property in his Amended Statement of Financial Affairs.  Debtor also explained that he transferred farming equipment and cattle to Cleavesville.  Thus, this Court concludes that the Debtor has explained his loss of assets and Plaintiffs' objection based on Section 727(a)(5) is overruled.

By separate order, Debtor's discharge will be denied.

/s/ Kathy A. Surratt-States
KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: April 29, 2016
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Michael J. Schmid
Schreimann Rackers Francka & Blunt
931 Wildwood Drive
Suite 201
Jefferson City, MO 65109

Cletus H. Rademacher
3625 Highway 19
Owensville, MO 65066

Simon J. Rademacher
205 East Lincoln Ave.
Owensville, MO 65066

Steven Edward Dyer
Law Office of Steven Dyer
10805 Sunset Office Drive
Suite 300
Sunset Hills, MO 63127

Gene Rademacher
1220 Highway CC
Bland, MO 65014